IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Teresa Doherty, | ) | C/A No.: 0:14-4013-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| PNC Mortgage, A Division of PNC Bank, NA | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Teresa Doherty, proceeding pro se, filed this case on October 15, 2014, relating to a mortgage foreclosure action on property located at 14 Wood Hollow Road, Lake Wylie, South Carolina 29710 ("Subject Property"). Plaintiff alleges PNC Mortgage, a division of PNC Bank, NA ("Defendant"), wrongfully brought the foreclosure action in state court ("Foreclosure Action") without legal authority to do so. [ECF No. 1 at 2]. She claims Defendant engaged in mortgage fraud, alleging the note and mortgage secured by the Subject Property were not validly transferred to Defendant. *Id.* She further alleges Defendant, through its officers, employees, and agents, violated S.C. Code Ann. § 16-17-430 and 15 U.S.C. §§ 1692c(c), 1692d, 1692e, and 1692g(b), by calling her and demanding to speak with her deceased husband on approximately 170 occasions beginning in February 2013. [ECF Nos. 1, 1-1 at 2].

This matter comes before the court on Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and Local Civ. Rule 7.04 (D.S.C.). [ECF No. 21]. Plaintiff filed a timely response [ECF No. 25], Defendant filed a reply [ECF No. 26], and this matter is

now ripe for disposition. Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), this case was been referred to the undersigned for all pretrial proceedings. For the reasons that follow, the undersigned recommends the court grant the motion to dismiss.

I.    Factual Background

On May 4, 2005, Plaintiff's husband Daryl M. Swiss ("Swiss") executed a promissory note ("Note") for $260,000.00 in favor of American Home Mortgage Network, Inc. ("AHMN"). [ECF Nos. 1 at 2, 21-1]. Swiss secured the Note with a mortgage ("Mortgage") on the Subject Property and Mortgage Electronic Registration Systems, Inc. ("MERS") served as the nominee for AHMN. [ECF Nos. 1 at 2, 21-2]. Swiss conveyed the Subject Property to himself and Plaintiff by quitclaim deed recorded on March 2, 2007. [ECF Nos. 1 at 2 and 21-8 at 8]. On August 25, 2010, Defendant filed the Foreclosure Action on the Note and Mortgage in the Court of Common Pleas in York County, South Carolina and named Swiss, Plaintiff, and other lienholders with interests in the subject property as defendants. [ECF Nos. 1 at 2, 21-3]. On March 17, 2011, MERS, as nominee for AHMN and its successors and assigns, executed an Assignment of Mortgage to Defendant ("Assignment"), which was recorded in York County, South Carolina on March 25, 2011. [ECF Nos. 1 at 2, 21-10 at 18].[1] Swiss passed away on January 23, 2013. [ECF Nos. 1-1 at 1, 21-5 at 10]. After having earlier stricken the case from the docket by agreement under Rule 40(j), SCRCP, Defendant restored the

---

[1] Although the Assignment of Mortgage was not executed until March 2011, Swiss was notified by letter dated April 16, 2010, that Defendant would service the mortgage. [ECF No. 25 at 3].

Foreclosure Action to the active docket on January 21, 2014. [ECF No. 1 at 2]. On October 13, 2014, Master-in-Equity S. Jackson Kimball ("Master") issued a judgment in favor of Wells Fargo Bank, N.A. ("Wells Fargo").[2] [ECF Nos. 1 at 2, 21-8]. Plaintiff alleges she filed for reconsideration of the Master's judgment[3] and will appeal to the South Carolina Court of Appeals if she does not obtain a satisfactory result. [ECF No. 1 at 2].

II.    Discussion

A.    Standard on Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Furthermore, in analyzing a Rule 12(b)(6) motion to

---

[2] Wells Fargo acquired the Mortgage via assignment from Defendant on June 17, 2014. [ECF No. 21-7].

[3] Plaintiff filed a Motion to Reconsider on October 6, 2014, eight days before the Master issued the judgment. *See* ECF Nos. 21-8, 21-9. Defendant argues the motion to dismiss was not filed in accordance with Rule 59(e), SCRCP, because Plaintiff filed it before the Master issued the final decision. [ECF No. 21 at 5]. However, Defendant also advises the court that the Motion to Reconsider remains pending and that a hearing on the motion scheduled for November 17, 2014, was cancelled because Plaintiff agreed to participate in a loan modification. *Id.*

dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs. Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

B.     Analysis

In its motion, Defendant argues dismissal is appropriate because Plaintiff is not a party to the Note or Mortgage and lacks standing to challenge their transfer; the South Carolina state court recognized the validity of the Assignment and ordered foreclosure; Plaintiff lacks standing to bring any action based on a criminal statute; and it is not a "debt collector" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"). [ECF No. 21 at 2].

1.     Standing

In her first and second causes of action, Plaintiff alleges Defendant has been engaged in mortgage fraud, specifically challenging the validity of the Assignment to Defendant as being signed and notarized by robo-signers and back-dated, and arguing Defendant lacked the authority to pursue the Foreclosure Action. [ECF No. 1 at 2]. Plaintiff admits she was not a party to the Note and Mortgage, which were signed by Swiss. [ECF No. 1-1 at 1]. Defendant argues that because Plaintiff was not a party to the Note or Mortgage, she lacks standing to challenge its status as the holder of the Note and Mortgage. [ECF No. 21 at 6]. Plaintiff fails to address Defendant's assertion that she lacks standing in her opposition to the motion to dismiss. [ECF No. 25].

The Note and Mortgage bear only the name of Swiss. [ECF Nos. 21-1, 21-2]. Plaintiff's interest in the Subject Property derives from the quitclaim deed that Swiss

executed after the Note and Mortgage and her status as Swiss's widow. *See* ECF Nos. 21-1, 21-2, 21-8 at 8.

This court has previously held that a plaintiff who is not a party to a contract lacks standing to challenge its validity. *See Reese v. U.S. Bank Nat. Ass'n*, C/A No. 3:11-2990-CMC-SVH, 2012 WL 1952819 at *3 (D.S.C. Apr. 30, 2012) ("Plaintiff lacks standing to contest the Assignment of the Mortgage. Plaintiff is only a party to the Mortgage and, because the Assignment is a separate contract to which Plaintiff is not a party, she cannot question its validity") (citing *R. J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 164 (4th Cir. 2004) ("Generally a third person not in privity of contract with the contracting parties has no right to enforce a contract" (applying South Carolina law)).

Plaintiff was neither a party to the Note and Mortgage executed by Swiss nor to the subsequent Assignment from MERS to Defendant. Based on this court's and the Fourth Circuit's interpretation of South Carolina law, the undersigned recommends the court find Plaintiff lacks standing to challenge Defendant's status as the holder of the Note and Mortgage. Because Plaintiff alleges nothing more to support her allegation that Defendant engaged in mortgage fraud than a challenge to the validity of the transfer of the Note and Mortgage, Plaintiff's lack of standing compels the undersigned to recommend the court grant Defendant's motion to dismiss the first and second causes of action in Plaintiff's complaint.

2.    State Court Proceedings

In the first and second causes of action against Defendant, Plaintiff alleges Defendant filed the Foreclosure Action without lawful authority. [ECF No. 1 at 2]. She alleges Defendant is the "servicer," but not the "holder" of the Note and Mortgage. *Id.* Plaintiff argues this case is not identical to the Foreclosure Action and indicates she does not seek this court's review of the state court ruling. *Id.* Defendant argues Plaintiff's claims are identical to the Foreclosure Action and should be dismissed based on the doctrine of collateral estoppel, SCRCP 13(a), and the *Younger*[4] and *Colorado River*[5] abstention doctrines. [ECF No. 21 at 6–14]. Plaintiff fails to address Defendant's arguments in her opposition to the motion to dismiss. [ECF No. 25]. The undersigned considers each of Defendant's arguments and recommends the court find that SCRCP 13(a), and the *Younger* and *Colorado River* doctrines provide further support for granting Defendant's motion to dismiss the first and second causes of action in Plaintiff's complaint.

a.    Doctrine of Collateral Estoppel

Defendant argues Plaintiff is collaterally estopped from re-litigating the issue of Defendant's right to pursue the Foreclosure Action because Plaintiff's allegation was litigated in the state court and found to be without merit. [ECF No. 21 at 6].

---

[4] The Supreme Court set forth this abstention doctrine in *Younger v. Harris,* 401 U.S. 37 (1971).
[5] This abstention doctrine was recognized in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

Federal courts traditionally adhere to the doctrine of collateral estoppel. *Allen v. McCurry*, 449 U.S. 90 (1980). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Id.* (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). The Fourth Circuit has set forth the following five requirements to apply the doctrine of collateral estoppel to an issue or fact: (1) the issue or fact must be identical to that previously litigated; (2) the issue or fact must have been resolved in the prior proceeding; (3) the issue or fact must have been critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding must be final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact must have had a full and fair opportunity to litigate the issue or fact in the earlier proceeding. *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322 (4th Cir. 2004).

The undersigned recommends the court find the doctrine of collateral estoppel to be inapplicable in this case because the circumstances do not meet all five requirements set forth in *In re Microsoft*. Plaintiff challenged the validity of the Assignment of the Note and Mortgage to Defendant and Defendant's standing to bring the Foreclosure Action in the state court proceedings, rendering the issues with respect to the validity of the transfer to Defendant identical to those previously litigated.  *See* ECF Nos. 1 at 2, 21-5 at 1–4, 21-6 at 4–7, 10–12. The issues and facts were resolved in the prior proceeding when the Master found Defendant to have standing to bring the Foreclosure Action. [ECF Nos. 1 at 2, 21-8 at 10]. The issues or facts were critical and necessary to the judgment in

7

the prior action because Defendant could not have obtained a judgment if it lacked standing to bring the Foreclosure Action. Plaintiff had a full and fair opportunity to litigate the same issues raised here in state court, having filed an answer and subsequent motions and having been represented by counsel. [ECF Nos. 21-5 at 1–4, 21-6 at 4–7, 10–12]. Despite all of these factors that direct the court to hold Plaintiff's first and second causes of action barred by collateral estoppel, the undersigned is constrained to recommend the court not apply the doctrine of collateral estoppel here because the parties indicate a motion to reconsider the judgment remains undecided in the state court action. Thus, because the state court action is not final and may be modified, the doctrine of collateral estoppel does not support Defendant's motion to dismiss.[6]

> b.     SCRCP 13(a)

In recognition of Plaintiff's allegation that this case is not identical to the state court action, Defendant argues Plaintiff's first and second causes of action should be dismissed because Plaintiff was required to assert all compulsory counterclaims in the Foreclosure Action.

SCRCP Rule 13(a) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was

---

[6] The undersigned notes that a decision to deny the motion to alter or amend the judgment would satisfy the last prong of the test set forth in *In Re Microsoft* and that the law would direct that the doctrine of collateral estoppel be applied if the state court's judgment were final.

commenced the claim was the subject of another pending action, or (2) the opposing party brought the suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

The South Carolina Supreme Court has interpreted SCRCP 13(a) to find that a counterclaim is compulsory where there is a logical relationship between the claim and the counterclaim. *North Carolina Federal Sav. and Loan Ass'n v. DAV Corp.*, 381 S.E.2d 903, 905 (S.C. 1989). "The purpose of Rule 13(a) is 'to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.'" *Beach Co. v. Twillman, Ltd.*, 566 S.E.2d 863, 865 (S.C. Ct. App. 2002) (quoting *S. Const. Co. v. Pickard*, 371 U.S. 57 (1962) (interpreting the federal counterpart to Rule 13(a), SCRCP)). Furthermore, a defendant's failure to raise a compulsory counterclaim in the first action precludes her from asserting the claim in a subsequent action. *Beach Co.*, 566 S.E.2d at 865 (*citing Crestwood Golf Club, Inc. v. Potter*, 493 S.E.2d 826, 835 (S.C. 1997)).

The undersigned recommends the court find that, to the extent that Plaintiff's first and second causes of action differ from arguments presented in the Foreclosure Action, Plaintiff should have brought them as compulsory counterclaims in that action, such that she is barred from bringing them in this case. The validity of the Assignment from MERS to Defendant and Defendant's legal authority to bring the Foreclosure Action both arose out of the transaction that was the subject matter of Defendant's claim for foreclosure in the state court. *See* SCRCP 13(a). Plaintiff alleges the claims against Defendant and no other parties, and Defendant was the plaintiff in the Foreclosure Action, rendering

9

assertion of compulsory counterclaims appropriate. *Id.* Furthermore, the exceptions set forth in SCRCP 13(a) do not apply in this case because there was no other pending claim at the time the Foreclosure Action was filed and that action was brought in a manner by which the court acquired jurisdiction to render a personal judgment. *Id.* The undersigned finds a logical relationship between the Foreclosure Action, Defendant's authority to bring the Foreclosure Action, and the validity of the Assignment to Defendant. *See North Carolina Federal Sav. and Loan Ass'n v. DAV Corp.*, 381 S.E.2d 903, 905 (S.C. 1989). Because Plaintiff failed to raise the first and second causes of action as compulsory counterclaims in the Foreclosure Action, SCRCP 13(a) bars her from asserting these claims in this action.

c.     Abstention

Defendant argues that this court should abstain from considering issues related to the Foreclosure Action based on the *Younger* and *Colorado River* doctrines.

The undersigned considers Defendant's arguments for the court's abstention in view of well-established Supreme Court precedent that abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation Dist.,* 424 U.S. at 813. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959). "Abdication of the obligation to decide cases can be justified under this doctrine only in

the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.*

i.     *Younger* Doctrine

Defendant argues the *Younger* doctrine directs that the court abstain from intervening in this case. [ECF No. 21 at 9–11]. In *Younger*, the Supreme Court held that a federal court should not interfere with ongoing state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster,* 75 F.3d 881, 903 (4th Cir. 1996). The Supreme Court extended the *Younger* doctrine to apply in "'noncriminal judicial proceedings when important state interests are involved.'" *Harper v. Pub. Serv. Comm'n of W. Va.,* 396 F.3d 348, 351 (4th Cir. 2005) (quoting *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)). The Supreme Court has indicated that abstention is appropriate where: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Maryland Comm'n on Human Relations,* 38 F.3d 1392, 1396 (4th Cir. 1994) (citing *Middlesex Cnty. Ethics Comm'n,* 457 U.S. at 432)).

The undersigned recommends a finding that the *Younger* doctrine directs the court to abstain from intervening in this case. Because a motion to alter or amend the judgment remains pending, the state court action is ongoing, which satisfies the first prong of the *Younger* doctrine. The second prong of *Younger* is satisfied because this court has recognized "there is an important state interest in adjudicating foreclosure matters pertaining to real property located within the state." *Hayes v. JP Morgan Chase Bank*,

11

C/A No. 3:13-1884-JFA-SVH, 2014 WL 4198897, at *3 (D.S.C. July 8, 2014) (quoting *Dennis v. HSBC Mortg. Services., Inc.*, No. 0:10-2693-MJP-PJG, 2011 U.S. Dist. LEXIS 98616, at *7 (D.S.C. Aug. 11, 2011) (citing *Shaffer v. Heitner,* 433 U.S. 186, 207–208, (1977) (recognizing a "state's strong interest in assuring the marketability of property within its borders and in providing the resolution of disputes about possession of that property")). Finally, the third prong under *Younger* is satisfied because Plaintiff was represented by counsel and had an adequate opportunity to raise federal claims in her pleadings in the Foreclosure Action. *See* ECF Nos. 21-5 at 1–4, 21-6 at 4–7, 10–12. Therefore, the *Younger* abstention doctrine compels the court to abstain from exercising jurisdiction over Plaintiff's cause of action pertaining to the Foreclosure Action.

### ii.     *Colorado River* Doctrine

Defendant argues that the court should abstain from exercising jurisdiction under the *Colorado* River doctrine because this case duplicates the Foreclosure Action. "Under the *Colorado River* abstention doctrine, a district court may abstain from exercising jurisdiction 'in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings, and wise judicial administration, giving regard to conservation of judicial resources, and comprehensive disposition of litigation clearly favors abstention.'" *Hayes,* 2014 WL 4198897, at *3 (quoting *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340–41 (2002) (internal citation and quotation marks omitted)).

To determine whether *Colorado River* abstention is appropriate, the court must first consider "whether there are parallel federal and state suits." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006). "Suits are parallel if substantially the same

parties litigate substantially the same issues in different forums." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005).

If there are parallel federal and state suits, the court "must carefully balance" six factors: (1) "whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others," (2) the relative convenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, (4) the order in which state and federal courts obtained jurisdiction and the progress achieved in each action, (5) the presence of federal-law issues, and (6) whether the state forum would adequately protect the parties' interests. *Chase Brexton Health Servs., Inc.*, 411 F.3d at 463–64 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 15–16, 24–27 (1983)). "No one factor is necessarily determinative," and the court's decision cannot "rest on a mechanical checklist." *Colo. River Water Conservation Dist.*, 424 U.S. at 818–19. The court must apply the factors in "a pragmatic, flexible manner with a view to the realities of the case at hand," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 13, taking into account "both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise," *Colo. River Water Conservation Dist.*, 424 U.S. at 818.

Plaintiff's asserts claims against Defendant, which is the plaintiff in the Foreclosure Action. [ECF No. 1 at 2]. Plaintiff's first and second causes of action relate directly to the facts and legal claims presented in the Foreclosure Action. *Id.* Because the Foreclosure Action and this action involve the same parties, facts, and legal claims, the undersigned finds the proceedings to be parallel.

The undersigned's consideration of the relevant factors weighs heavily in favor of

abstention. The first factor does not apply because the subject matter of the litigation does not involve property "where the first court may assume in rem jurisdiction to the exclusion of others." *Chase Brexton Health Servs., Inc.*, 411 F.3d at 463. The second factor weighs in favor of abstention because litigation in the federal court is inconvenient to the parties in light of the pendency and progress of the Foreclosure Action. The Foreclosure Action was initially filed on August 25, 2010, and a judgment was issued on October 13, 2014. [ECF Nos. 21-3, 21-8]. Plaintiff filed this case on October 15, 2014, more than four years after the Foreclosure Action was filed in state court and two days after a judgment was issued. [ECF No. 1]. The parties engaged in extensive litigation in the state court, which resulted in the issuance of a judgment and a Notice of Master in Equity Sale. *Id.*

The third factor discourages an avoidance of piecemeal litigation and weighs in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co.*, 286 F.3d 737, 744 (4th Cir. 2002) (internal citation and quotation marks omitted).

The fourth factor considers the order in which the courts obtained jurisdiction and the progress achieved in each action. It weighs in favor of abstention because the Foreclosure Action was brought in state court first and judgment and judicial sale was ordered before the case was brought in this court. "Plainly, this disparate progression of the cases weighs in favor of abstention." *Matiyasic v. Access Controls, Inc.*, 991 F.2d 790 (table), 1993 WL 100054, at *2 (4th Cir. Apr. 6, 1993) (per curiam) ("[o]ver six months of discovery followed services of process in the state proceeding, while the federal action

remained dormant"). *Md. Reclamation Assocs., Inc. v. Harford County*, Case No. HAR–93–1291, 1993 WL 460835, at *5 (D.Md. Oct. 27, 1993) (abstention warranted, partly because "substantial time and resources have already been expended in the earlier-filed state action, and the state and federal actions involve the same events").

A weighing of the fifth factor supports abstention because Plaintiff's claims with respect to the Note and Mortgage sound in state law. The lack of a question of federal law "points forcefully toward abstention." *Automated Sys. & Programming, Inc.*, 176 F.Supp.2d 458, 463 (D.Md. 2001); *see Beck v. CKD Praha Holding, A.S.*, 999 F.Supp. 652, 657 (D.Md. 1998) (abstaining because, inter alia, "state, not federal law govern[ed] all aspects of Plaintiffs' claims, giving the state court a substantially greater interest in adjudicating this controversy").

Because the state proceedings are adequate to protect the parties' interests, the sixth factor weighs in favor of abstention. The Foreclosure Action concerns only state law claims, which are "distinctly tied to the State" of South Carolina. *Covance Labs., Inc. v. Orantes*, 338 F.Supp.2d 613, 619 (D.Md. 2004); *see also Seneca One Fin., Inc. v. Structured Asset Funding, LLC*, C/A No. DKC 10-1704, 2010 WL 4449444, at *7 (D.Md. Nov. 4, 2010) (state court was an adequate forum because it was "fully capable of providing relief to either party").

Because all five of the factors relevant to this case weigh in favor of abstention, the undersigned finds that the *Colorado River* doctrine supports Defendant's motion to dismiss.

3.    Lack of Standing to Bring Action Based on Criminal Statute

Plaintiff alleges Defendant violated S.C. Code Ann. § 16-17-430, by repeatedly telephoning her for the purpose of harassment. [ECF No. 1 at 2].

Pursuant to S.C. Code Ann. § 16-17-430(A), "[i]t is unlawful for a person to: (3) telephone or electronically contact another repeatedly, whether or not conversation ensues, for the purpose of annoying or harassing another person or his family." Furthermore, "[a] person who violates any provision of subsection (A) is guilty of a misdemeanor and, upon conviction, must be fined not less than one hundred dollars nor more than five hundred dollars or imprisoned not more than thirty days." S.C. Code Ann. § 16-17-430(B).

The undersigned recommends the court find Plaintiff lacks standing to bring a civil action against Defendant based on S.C. Code Ann. § 16-17-430. South Carolina courts recognize no private right of action under a criminal statute unless the legislature intended for such a right to be created. *Whitworth v. Fast Fare Markets of South Carolina, Inc.*, 338 S.E.2d 155 (S.C. 1985); *see also Dorman v. Aiken Communications, Inc.*, 398 S.E.2d 687, 689 (S.C. 1990). In *Whitworth*, the South Carolina Supreme Court specified "[t]he general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability." *Id.* at 420. In *Dorman*, 398 S.E.2d at 689, the court considered a criminal statute, S.C. Code Ann. § 16-3-730, which specified that "[w]hoever publishes or causes to be published the name of any person upon whom the crime of criminal sexual conduct has been committed or alleged

16

to have been committed in this State in any newspaper, magazine or other publication shall be deemed guilty of a misdemeanor. . . ." The court found the statute created no private right of action for a sexual assault victim whose identity was revealed by a newspaper because the statute was primarily enacted for protection of the public as an entity. *Dorman*, 398 S.E.2d at 689. The statute considered in *Dorman* is similar to S.C. Code Ann. § 16-17-430 in that both are criminal statutes that provide only for criminal punishment. The legislature provided for no civil liability based on the actions criminalized under either statute. Based on the South Carolina Supreme Court's finding in *Dorman* that the law was enacted for protection of the public as a whole and created no right of action for victims against those who violated it, it follows the South Carolina court would reach the same conclusion regarding S.C. Code Ann. § 16-17-430. Therefore, the undersigned recommends the court grant Defendant's motion to dismiss Plaintiff's allegation that Defendant violated S.C. Code Ann. § 16-17-430.

### 4.    FDCPA

Plaintiff alleges Defendant violated 15 U.S.C. §§ 1692c(c), 1692d, 1692e, and 1692g(b), which fall under the FDCPA, by telephoning her approximately 170 times beginning in February 2013 for the purpose of collecting a debt. [ECF Nos. 1, 1-1]. She alleges she repeatedly informed Defendant of her husband's death and requested Defendant stop calling, but that Defendant continued to telephone her house. [ECF Nos. 1, 1-1, 1-2, 1-3, 1-4, 1-5]. Defendant argues that it did not violate the law, which applies only to debt collectors, because it is not a debt collector as defined by the FDCPA. [ECF No. 21 at 15–17]. Defendant argues that all relevant times, it served as either the holder

17

or servicer of the Note and Mortgage. [ECF No. 21 at 16]. Although Plaintiff indicated in the complaint that Defendant was the "servicer" of the Note and Mortgage, she argues in her response to Defendant's motion to dismiss that her use of quotes around the word "servicer" denoted that she disputed Defendant's claim to be the servicer of the Note and Mortgage. [ECF No. 25 at 1]. She maintains Defendant meets the definition of a debt collector under the FDCPA. *Id.* at 1–2. She further argues *Scott v. Wells Fargo Home Mortgage*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003), supports the notion that a mortgage servicer can be considered a debt collector for purposes of the FDCPA. *Id.* at 2.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not completely disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA defines debt collectors as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The following are not considered debt collectors under the FDCPA:

> (A) any officer or employee of a creditor, while in the name of the creditor, collecting debts for such creditor;
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

18

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is (i) incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

*Id.*

The distinction between debt collectors and non-debt collectors in the FDCPA is whether the individual or business is attempting to collect money owed to it or to another. *See* 15 U.S.C. § 1692a(6); *see also Brown v. Wachovia Bank*, C/A No. 8:10-1816-HMH-JDA, 2011 WL 5024297, at *3 (D.S.C. Sept. 30, 2011) ("[C]reditors collecting their own debts are not "debt collectors" for purposes of the FDCPA and are exempt from the FDCPA's provisions.") (citing *Glover v. Univ. Motor Co.*, C/A No. 3:08-2254, 2010 WL 234903, at *3 (D.S.C. Jan. 15, 2010); *Serfass v. CIT Group/Consumer Fin., Inc.*, C/A No. 8:07-90, 2008 WL 351116, at *3 (D.S.C. Feb. 7, 2008) (finding the defendant was not regulated by the FDCPA because the defendant was a creditor collecting its own debts); *Scott*, 326 F. Supp. 2d at 717 ("[C]reditors are not liable under the FDCPA." (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir. 1985))); *Davis v. Dillard Nat'l Bank*, C/A No. 1:02-546, 2003 WL 21297331, at *4 (M.D.N.C. June 4, 2003) ("Crediting

19

institutions, such as banks, are not debt collectors under section 1692a(6)(A) because they collect their own debts and are in the business of lending money to consumers." (citing *Thomasson v. Bank One, La., N.A.*, 137 F. Supp. 2d 721, 724 (E.D. La. 2001); *Meads v. Citicorp Credit Servs., Inc.*, 686 F. Supp. 330, 333 (S.D. Ga. 1988))). The FDCPA applies only to debt collectors, and well-established law indicates mortgagees[7] are not debt collectors within the definition of the FDCPA. *Carrington v. Indy Mac Mortg. Services*, C/A No. 5:12-1060-JMC, 2013 WL 530050, at *3 (D.S.C. Feb. 8, 2013) (citing *Scott*, 326 F. Supp. 2d at 718, and *Brown*, 2011 WL 5024297, at *3).

Although this court must accept as true Plaintiff's allegations regarding Defendant's actions giving rise to this claim, the court is not required to accept her legal conclusion that Defendant served as a debt collector where such a legal conclusion is not supported by law. *See Edwards*, 178 F.3d at 244. The Mortgage was assigned to Defendant on March 17, 2011, approximately two years before Plaintiff alleges Defendant began calling her house and asking to speak with her deceased husband. *See* ECF Nos. 1 at 2, 1-1, 21-10 at 18. Although Plaintiff challenges the validity of the Assignment, the undersigned has recommended and relevant law supports a finding that Plaintiff lacks standing to raise the issue of the Assignment's validity. Therefore, it follows that the March 2011 Assignment made Defendant the mortgagee of the subject property. Prior to March 2011, it appears Defendant was the Mortgage servicer, but Defendant was the mortgagee at the time of the actions that gave rise to Plaintiff's claim

---

[7] A mortgagee is "[o]ne to whom property is mortgaged; the mortgage creditor, or lender." *Black's Law Dictionary* (10th ed. 2014), *available at* WestlawNext BLACKS. A mortgagee is also termed a mortgage-holder. *Id.*

under the FDCPA.[8] *See* ECF No. 25 at 3. Therefore, because Defendant was a mortgagee as opposed to a debt collector, the undersigned recommends the court find that Defendant's actions did not fall under the FDCPA and that Plaintiff's third cause of action be dismissed.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the court grant the motion to dismiss. [ECF No. 21].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 16, 2015                                                    Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[8] Because Defendant was the mortgagee at all times relevant to the third cause of action, it is not necessary for the court to consider whether Defendant would have been a debt collector if it were merely the mortgage servicer. However, the undersigned notes, contrary to Plaintiff's argument, that *Scott* specifically states "the law is well-settled (as discussed above) that creditors, mortgagors, and *mortgage servicing companies* are not debt collectors and are statutorily exempt from liability under the FDCPA." 326 F. Supp. 2d at 718 (emphasis added).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).